**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA, *ex rel.*
LOUIS LONGO,

      Plaintiff,

v.                                                        Civil Action No. 17-1654

WHEELING HOSPITAL, INC.,
R&V ASSOCIATES, LTD., and
RONALD L. VIOLI,

      Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE**

---

## TABLE OF CONTENTS

**Page**

BACKGROUND & SUMMARY ..................................................................................... 1

I.     GOVERNING LEGAL STANDARDS ....................................................................... 3

II.    THIS CASE SHOULD BE TRANSFERRED TO THE NDWV ................................... 3

     A.    The NDWV Is an Appropriate Transferee Forum .................................................. 3

     B.    The Private Interest Factors Strongly Favor Transfer to the NDWV .................... 4

           1.    The Parties' Forum Preferences Favor Transfer to the NDWV ................. 4

           2.    The Government's Claim Arose in the NDWV ......................................... 6

           3.    The Convenience of the Parties Favors Transfer to the NDWV ............... 6

           4.    The Convenience of the Witnesses Favors Transfer to the NDWV .......... 7

           5.    The Location of Books and Records Favors Transfer to the NDWV ....... 10

     C.    The Public Interest Factors Strongly Favor Transfer to the NDWV .................... 11

           1.    Enforceability of a Judgment Is a Neutral Factor ................................... 11

           2.    Practical Considerations of Expediting Trial and Reducing Costs Favor Transfer to the NDWV ................................................................ 11

           3.    Relative Court Congestion Does Not Disfavor Transfer to the NDWV ... 12

           4.    The Local Interest in Deciding Local Controversies at Home Favors Transfer to the NDWV .......................................................................... 12

           5.    Public Policies of the For a Favor Transfer to the NDWV ...................... 14

           6.    The Familiarity of the Trial Judge with Applicable State Law ............... 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armstrong Dev. Properties, Inc. v. Ellison*,
No. CIV.A. 13-1590, 2014 WL 1452322 (W.D. Pa. Apr. 14, 2014) ................................ 6

*Costello v. Novatis Pharm. Corp.*,
No. CIV. A. 05-3841, 2006 WL 1479800 (E.D. Pa. May 25, 2006) ........................... 6, 12

*EEOC v. FedEx Ground Package Sys., Inc.*,
C.A. No. WMN-14-3081, 2015 WL 790500 (D. Md. Feb. 24, 2015) ........................... 12

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) .............................................................................. 13, 14

*Hillard v. Guidant Corp.*,
76 F. Supp. 2d 566 (M.D. Pa. 1999) ................................................................. 5

*Hollander v. Hospira, Inc.*,
C.A. No. 2:10-CV-00235-JD, 2010 WL 4751669 (E.D. Pa. Nov. 22, 2010).................... 7

*In re Ski Fire in Kaprun, Austria on Nov. 11, 2000*,
499 F. Supp. 2d 437 (S.D.N.Y. 2007) ............................................................... 4

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ........................................................................... 3

*Lumbermens Mut. Cas. Ins. Co. v. Peirce, Raimond, & Coulter, P.C.*,
No. 8-1257, 2009 WL 1035022 (W.D. Pa. Apr. 17, 2009) ..................................... 5

*Lynn v. Consolidated Rail Corp.*,
No. CIV. A. 94-408, 1994 WL 185032 (E.D. Pa. May 13, 1994) .............................. 8, 14

*Northgate Processing, Inc. v. Spirongo Slag McDonald, LLC*,
C.A. No. 15-1116, 2015 WL 7308675 (W.D. Pa. Nov. 19, 2015)............................... 3, 5

*Saint-Gobain Calmar, Inc. v. Nat'l Prod. Corp.*,
230 F. Supp. 2d 655 (E.D. Pa. 1999)............................................................... 5, 11

*Sandvik AB v. Rockmore Int'l, Inc.*,
No. 4:05CV575, 2005 WL 3159282 (M.D. Pa. Nov. 28, 2005)................................... 7

*Turner Constr. Co. v. Indep. Excavating, Inc.,*
    C.A. No. 16-337, 2016 WL 1408120 (W.D. Pa. April 11, 2016)..................................13

*United States v. Klearman,*
    82 F. Supp. 2d 372 (E.D. Pa. 1999)...........................................................................5

*United States v. Quicken Loans Inc.,*
    217 F. Supp. 3d 272 (D.D.C. 2016) .....................................................................6, 12

*United States v. T.F.H. Publ'n, Inc.,*
    No. 2:10CV437, 2010 WL 4181151 (W.D. Pa. Oct. 20, 2010).......................4, 6, 10, 15

*United States ex rel. FLFMC, LLC v. EBSCO Indus., Inc.,*
    No. CIV.A. 10-231, 2011 WL 818795 (W.D. Pa. Jan. 28, 2011)....................................4

*United States ex rel. Hollander v. MTD Prod., Inc.,*
    No. CIV. A. 09-5507, 2011 WL 3501749 (E.D. Pa. Aug. 9, 2011)..................................4

*United States v. Ohio Art Co.,*
    No. CIV. A. 10-230, 2010 WL 3155160 (W.D. Pa. July 30, 2010)....................5, 6, 7, 11

*United States ex rel. Ondis v. City of Woonsocket, R.I.,*
    480 F. Supp. 2d 434 (D. Mass. 2007)........................................................................14

*United States ex rel. Penizotto v. Bates East Corp.,*
    No. CIV. A. 94-3626, 1996 WL 417172 (E.D. Pa. July 18, 1996)...................................4

*United States ex rel. Smith v. Athena Constr. Group, Inc.,*
    Civil No. 1:17-cv-60, 2018 WL 4110743 (M.D. Pa. Aug. 29, 2018) ..............................4

*United States ex rel. Salomon v. Wolff,*
    268 F. Supp. 3d 770 (D. Md. 2017) .....................................................................3, 4, 5

*United States ex rel. Thomas v. Duke Univ.,*
    Case No. 4:13-CV-17, 2017 WL 1169734 (W.D. Va. Mar. 28, 2017) .......................5, 14

*Wheeling-Pittsburgh Steel Corp. v. U.S. E.P.A.,*
    No. CIV A. 98-4654, 1999 WL 111459 (E.D. Pa. March 3, 1999) ...............................13

**STATUTES AND RULES**

28 U.S.C. § 1404(a) ....................................................................................1, 3, 4, 7, 15

31 U.S.C. § 3732(a) ..................................................................................................3

W. Va. Code §§ 16-5B-1, *et seq.* ...........................................................................15

W. Va. Code §§ 30-1C-1, *et seq.* ...........................................................................15

**OTHER AUTHORITY**

Fifth Amended Standing Order No. 1, Method of Assignment of Civil and Criminal Matters
    to District Judges, Misc. No.: 5:00-MC-10 (N.D. W.Va. Mar. 7, 2019)............................1

Pursuant to 28 U.S.C. § 1404(a), Defendants respectfully submit this Memorandum of Law in Support of their Motion to Transfer the Venue from the United States District Court for the Western District of Pennsylvania ("WDPA") to the United States District Court for the Northern District of West Virginia ("NDWV").  As explained below, this motion should be granted.

## BACKGROUND *& SUMMARY*

On December 22, 2017, Relator Louis Longo, a disgruntled former employee of Wheeling Hospital, filed this action against Defendants under the *qui tam* provisions of the False Claims Act ("FCA").  (ECF #1.)  On March 25, 2019, the United States filed its Complaint-in-Intervention ("CII").  (ECF #19.)  Wheeling Hospital is a non-profit, charitable organization incorporated in West Virginia with a mission to meet the underserved healthcare needs of the Wheeling, West Virginia community.  Defendant R&V is a management consulting company retained by Wheeling Hospital.  (CII ¶ 9.)  Defendant Mr. Violi is a member of R&V who, pursuant to R&V's contract with Wheeling Hospital, has served as Wheeling Hospital's Chief Executive Officer since 2006. (CII ¶ 10.)  The Government's claims are based on (untrue) allegations that Wheeling Hospital entered into physician compensation arrangements that violated the Stark Law and Anti-Kickback Statute, and thereby caused false claims to be submitted to Medicare.  (CII ¶ 2.)

The NDWV is a more convenient forum because *all* of the operative facts alleged in the Complaint occurred in the NDWV, where Wheeling Hospital is located.  (CII ¶¶ 57-155, 167-87.) Moreover, most of the witnesses, documents and other sources of proof are in Wheeling.  Thus, the NDWV is a logical, preferable venue because the federal courthouse in Wheeling[1] is situated only ***3.3 miles*** from Wheeling Hospital, which is the epicenter of the Government's case, whereas

---

[1] The NDWV's internal rules would venue this matter in the Wheeling courthouse.  *See* Fifth Amended Standing Order No. 1, Method of Assignment of Civil and Criminal Matters to District Judges, Misc. No.: 5:00-MC-10, ¶ 4 (N.D. W.Va. Mar. 7, 2019), attached as Exhibit A to the Declaration of Benjamin R. Ogletree, Esq. ¶ 2 (Ex. 1 hereto).

the federal courthouse in Pittsburgh is in a different state **_nearly 60 miles_** from Wheeling Hospital. Importantly, there is no public interest in trying this case in Pennsylvania, which involves the compensation of West Virginia doctors by a West Virginia hospital that treats patients primarily in West Virginia.   On the other hand, this case is a local controversy of tremendous significance to the Wheeling community which has an important interest in deciding this case at home, in the NDWV.   Finally, before the Government filed its Complaint in this case, Wheeling Hospital commenced an action against the Relator in the NDWV based upon breach of his fiduciary duties related to the false allegations and claims he asserted against Wheeling Hospital in this case.   *See Wheeling Hospital, Inc. v. Longo*, Case No. 5:19-cv-00032-FPS (N.D. W.Va. Filed: Mar. 13, 2019).  (Ogletree Decl. ¶ 3, Ex. B.)  As a matter of judicial economy, this case should be transferred to the NDWV where Wheeling Hospital already is pursuing its related action against the Relator.

The Government's decision to pursue this action in this district is classic forum shopping in an effort to avoid having its claims decided by a Wheeling jury who would be most affected by the outcome of this case.  In truth, the only link between this case and the WDPA is that Defendants R&V and Violi reside here.  (CII ¶¶ 9-10.)  The Complaint, however, does not allege that R&V engaged in any relevant conduct in the WDPA.  Rather, all of R&V's purported conduct took place, if at all, in the NDWV.  Likewise, although Mr. Violi is a Pennsylvania citizen, he has an apartment in Wheeling while he is working at Wheeling Hospital, where all of his alleged conduct occurred.  (Declaration of Jim Murdy ("Murdy Decl.") ¶ 4 (Ex. 2 hereto)).  In sum, other than the bare fact that R&V and Violi reside in this district, there is no connection between this forum and the Complaint's allegations of wrongdoing.

## I.     GOVERNING LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), a court should transfer venue if the movant shows by a preponderance of the evidence that (1) the case originally could have been brought in the proposed transferee forum and (2) the transfer would promote the convenience of the parties and witnesses, and would be in the interests of justice. *See United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017). Under the second step of a § 1404(a) analysis, a court should weigh the "private" and "public" interest factors set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 875 (3d Cir. 1995). The "private factors" are: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of witnesses; and (5) the location of books and records. The "public factors" are: (1) the enforceability of a judgment; (2) practical considerations of expediting trial and reducing costs; (3) relative court congestion; (4) the local interest in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *See Northgate Processing, Inc. v. Spirongo Slag McDonald, LLC*, C.A. No. 15-1116, 2015 WL 7308675, at *3 (W.D. Pa. Nov. 19, 2015). Here, Defendants have more than met their burden to show that transfer is warranted.

## II.    THIS CASE SHOULD BE TRANSFERRED TO THE NDWV

### A.     The NDWV Is an Appropriate Transferee Forum

The NDWV is an appropriate transferee forum because this case originally could have been filed in that district. Under the FCA, 31 U.S.C. § 3732(a), which authorizes nationwide service of process, all Defendants would be subject to personal jurisdiction in the NDWV and that Court would have subject-matter jurisdiction over this case. In addition, under § 3732(a), the NDWV is a proper venue because Defendants either reside in that district, are "found" there, transact business there, and/or the NDWV is the situs where all the alleged conduct underlying the Government's

claims occurred.  *See United States ex rel. Smith v. Athena Constr. Group, Inc.*, Civil No. 1:17-cv-60, 2018 WL 4110743, at *4 (M.D. Pa. Aug. 29, 2018).  Thus, Defendants have satisfied the first step of the § 1404(a) analysis.

### B.    The Private Interest Factors Strongly Favor Transfer to the NDWV

Consideration of the private interest factors militates heavily in favor of transferring this case to the NDWV.

### 1.    The Parties' Forum Preferences Favor Transfer to the NDWV

The Relator filed suit in this district and the Government accepted the Relator's choice of forum.  In FCA *qui tam* cases like this one, however, the deference that attaches to a plaintiff's forum selection is inapplicable.[2]  *First*, "[b]ecause the United States is the real plaintiff in *qui tam* actions," the Relator's choice of forum "is entitled to relatively little weight."  *United States v. T.F.H. Publ'n, Inc.*, No. 2:10CV437, 2010 WL 4181151, at *2 (W.D. Pa. Oct. 20, 2010) (citations omitted; collecting cases); *see also United States ex rel. FLFMC, LLC v. EBSCO Indus., Inc.*, No. CIV.A. 10-231, 2011 WL 818795, at *7 (W.D. Pa. Jan. 28, 2011); *United States ex rel. Hollander v. MTD Prod., Inc.*, No. CIV. A. 09-5507, 2011 WL 3501749, at *2 (E.D. Pa. Aug. 9, 2011).  In any event, the Relator's choice of forum is all but irrelevant now that the Government has intervened and assumed control of the case.  *See United States ex rel. Penizotto v. Bates East Corp.*, No. CIV. A. 94-3626, 1996 WL 417172, at *2-3 (E.D. Pa. July 18, 1996).

*Second*, where, as in this case, "the plaintiff is a government agency, the deference to the plaintiff's choice is diminished further."  *Wolff*, 268 F. Supp. 3d at 775 (collecting cases).  Lesser

---

[2] "The degree of deference to be accorded the plaintiff's choice of forum is not determinative of the final outcome; rather, it merely re-calibrates the scales for the remaining two steps of the analysis. . . . [W]here less deference is due, the easier it becomes for the defendant to succeed on a [§ 1404(a)] motion by showing that convenience would be better served by litigating in another [forum]."  *In re Ski Fire in Kaprun, Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 441-42 (S.D.N.Y. 2007) (internal quotation marks and footnotes omitted).

deference applies because the Government is no more a resident of the WDPA than it is of the NDWV.  *See United States v. Klearman*, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1999).  Thus, the WDPA is no more convenient *vel non* to the United States than is the NDWV.

*Third*, where, as in this case, none of the operative conduct occurred in the transferor district, the plaintiff's forum selection receives even less deference.  *See Hillard v. Guidant Corp.*, 76 F. Supp. 2d 566, 569 (M.D. Pa. 1999); *Wolff*, 268 F. Supp. 3d at 775; *Saint-Gobain Calmar, Inc. v. Nat'l Prod. Corp.*, 230 F. Supp. 2d 655, 669 (E.D. Pa. 1999); *United States ex rel. Thomas v. Duke Univ.*, Case No. 4:13-CV-17, 2017 WL 1169734, *3 (W.D. Va. Mar. 28, 2017) (ordering transfer where "*none* of the operative facts took place in the [transferor district]").

*Finally*, the plaintiff's choice of forum carries less weight "when transfer would result in negligible inconvenience to the Plaintiff."  *Lumbermens Mut. Cas. Ins. Co. v. Peirce, Raimond, & Coulter, P.C.*, No. 8-1257, 2009 WL 1035022, at *3 (W.D. Pa. Apr. 17, 2009).  In this case, the NDWV would not be an inconvenient forum for the United States because the U.S. Attorney's Office for the NDWV is headquartered in the same building as—and thus is footsteps away from— the federal courthouse in Wheeling.  (Ogletree Decl. ¶ 6, Ex. E.)  *See Northgate Processing*, 2015 WL 7308675, at *4 n.2 (noting that courts may take judicial notice of geographic locations).  To the extent the Government's litigation counsel assigned to this matter would prefer that this case stay in the WDPA, "[t]he law is clear that the location or convenience of litigation counsel does not merit consideration in a discretionary transfer evaluation."  *United States v. Ohio Art Co.*, No. CIV. A. 10-230, 2010 WL 3155160, at *2 (W.D. Pa. July 30, 2010).  In short, the Government's choice of forum is entitled to little or no deference.

On the other hand, Defendants' strong preference is to litigate this case in the NDWV where Wheeling Hospital is located, where most of the witnesses and documents are found, and

where there is a local interest in deciding this local controversy.  In similar cases, courts in this district have recognized that a "Plaintiff's choice is given less weight when few of the operative facts occurred in the chosen forum, and the defendant has indicated strong preference for another district." *T.F.H. Publ'n, Inc.*, 2010 WL 4181151, at *2; *Ohio Art Co.*, 2010 WL 3155160, at *2 (same).  This factor thus favors transfer.

### 2.    The Government's Claims Arose in the NDWV

This factor favors transfer because the Government's claims arose, if at all, in the NDWV and have no connection to the WDPA.  (CII ¶¶ 57-155, 167-87.)  *See United States v. Quicken Loans Inc.*, 217 F. Supp. 3d 272, 277 (D.D.C. 2016) ("the location where the [FCA] claims arose outweighs the government's choice of forum"); *Costello v. Novatis Pharm. Corp.*, No. CIV. A. 05-3841, 2006 WL 1479800, at *2 (E.D. Pa. May 25, 2006) ("The most outstanding of the private factors is that the claim arose entirely in [transferee forum].").

### 3.    The Convenience of the Parties Favors Transfer to the NDWV

The NDWV would be a more convenient venue for the parties because it is where Wheeling Hospital is located, where Defendants and most of the witnesses and documents are situated, and where the Government's claims arose.  According to Google Maps, the federal courthouse in Wheeling is only *3.3 miles* and a 7 minute drive from Wheeling Hospital.  (Ogletree Decl. ¶ 4, Ex. C.)  By comparison, the federal courthouse in downtown Pittsburgh is 57.7 miles and (even with no rush-hour traffic) is more than an hour drive from Wheeling Hospital.  (Ogletree Decl. ¶ 5, Ex. D.)  *See Armstrong Dev. Properties, Inc. v. Ellison*, No. CIV.A. 13-1590, 2014 WL 1452322, at *3 n.3 (W.D. Pa. Apr. 14, 2014) ("It is well settled that the Court may take judicial notice of geography and other Courts have used Google Maps to estimate distances between two established locations").  For these reasons alone, the NDWV would be far more convenient for Defendants.

Moreover, the NDWV would not be an inconvenient forum for the United States because, as noted above, there is a U.S. Attorney's Office located in the federal courthouse building in Wheeling. (Ogletree Decl. ¶ 6, Ex. E.)  This Court has recognized that transfer of venue is appropriate where, as here, transfer would aid the moving party and not disadvantage the opponent.  *See Ohio Art Co.*, 2010 WL 3155160, at *3 n.11.  This factor thus favors transfer to the NDWV.

### 4.    The Convenience of the Witnesses Favors Transfer to the NDWV

The NDWV is a more convenient forum than the WDPA for most of the witnesses in this case, which is a critical factor in deciding a motion to transfer venue.  *See Sandvik AB v. Rockmore Int'l, Inc.*, No. 4:05CV575, 2005 WL 3159282, at *5 (M.D. Pa. Nov. 28, 2005).  For example, the Complaint ¶¶ 104 and 128 identifies physicians employed by Wheeling Hospital with whom the Government alleges Wheeling Hospital has unlawful compensation arrangements.  Four of those physicians—Drs. Victor Maevsky, Bradley Schmitt, Lowell Shinn and Chandra Swamy — have tendered declarations in support of this motion.  These key witnesses likely would be called to testify to refute the Government's false allegations pertaining to them.  In addition, these witnesses would testify regarding, *inter alia*, their contract (including compensation) negotiations with Wheeling Hospital and their medical practices and procedures—all of which are pertinent to the issues in this case.  (Declaration of Dr. Victor Maevsky ("Maevsky Decl.") ¶ 16 (Ex. 3 hereto); Declaration of Dr. Bradley Schmitt ("Schmitt Decl.") ¶ 12 (Ex. 4 hereto); Declaration of Dr. Lowell Shinn ("Shinn Decl.") ¶ 12 (Ex. 5 hereto); Declaration of Dr. Chandra Swamy ("Swamy Decl.") ¶ 9 (Ex. 6 hereto)).  *See Hollander v. Hospira, Inc.*, C.A. No. 2:10-CV-00235-JD, 2010 WL 4751669, *2 (E.D. Pa. Nov. 22, 2010) (noting that under § 1404(a), a "defendant need do no more than "clearly specify the key witnesses to be called and . . . make a general statement of what their testimony will cover").

In addition, the physicians explain in their declarations that litigating this case in the WDPA, rather than in the NDWV, would cause significant disruption to their practices and patients.  For example, requiring the physicians to leave their busy practices to attend court proceedings in Pittsburgh would impair the physicians' ability to care for their patients, result in cancellation of patient appointments and travel-related lost work time, create a danger that patients would seek care from other providers, and interfere with the physicians' already limited family and personal time.  (Maevsky Decl. ¶¶ 9-13; Schmitt Decl. ¶¶ 10-11; Shinn Decl. ¶¶ 7-11; Swamy Decl. ¶¶ 6-7.)  These hardships would be avoided by transferring this case to the NDWV.  *See Lynn v. Consolidated Rail Corp.*, No. CIV. A. 94-408, 1994 WL 185032, *2 (E.D. Pa. May 13, 1994) (transferring venue because "the witnesses who are likely to testify will . . . have to travel over 200 miles to Philadelphia with the concomitant loss of work and personal time and at some cost to either the witnesses themselves or to the defendant").

The Complaint also directs allegations to officers of Wheeling Hospital, including Jim Murdy, the Chief Financial Officer (CII ¶ 69), and Scott McKeets, the former Chief Operating Officer.  (CII ¶ 69.)  Naturally, these are important witnesses who likely would be called to testify at trial regarding to the Government's allegations pertaining to them.  Murdy Decl. ¶ 9; Declaration of Scott McKeets ("McKeets Decl.") ¶ 8 (Ex. 7 hereto).  In addition, Mr. Murdy could provide important testimony regarding financial information pertaining to Wheeling Hospital and other aspects of Wheeling Hospital's finances and operations related to this case.  (Murdy Decl. ¶ 9.)  Similarly, Mr. McKeets could furnish important testimony regarding Wheeling Hospital's employment and management of physicians and other aspects of the Hospital's management and operations related to this case.  (McKeets Decl. ¶ 8.)  Messrs. Murdy and McKeets both live in

Ohio (making Pittsburgh even further away) and attest that the NDWV would be a more convenient forum than the WDPA.  (Murdy Decl. ¶¶ 7-8; McKeets Decl. ¶ 7.)

Finally, the Complaint ¶¶ 104 and 128 identifies a number of physicians who no longer work for Wheeling Hospital but with whom the Government alleges the Hospital had unlawful compensation arrangements.  Many of these physicians still live or work  near Wheeling and thus the NDWV would be more convenient for them than the WDPA.  Other former physicians have moved out of state and thus the NDWV is no more (in)convenient than the WDPA:

   ▪ *Dr. Mehdi Akhavan-Heidari*: Resides in Las Vegas, Nevada.  (Maevsky Decl. ¶ 8.)

   ▪  *Dr. Nabiel AlKhouri*: WVU Cancer Institute at Reynolds Memorial Hospital, 901 Jefferson Avenue, Glen Dale, WV 26038.  (Ogletree Decl. ¶ 7, Ex. F.)  Dr. Alkhouri's office is 9.3 miles and a 13 minute drive from the federal courthouse in Wheeling. (Ogletree Decl. ¶ 8, Ex. G.)  By contrast, Dr. Alkhouri's office is 66 miles and a 1 hour and 18 minute drive from the federal courthouse in Pittsburgh.  (Ogletree Decl. ¶ 9, Ex. H.)

   ▪ *Dr. Hugo Andreini*: Reynolds Memorial Urology, 800 Wheeling Avenue, First Floor, Glen Dale, WV 26038.  (Ogletree Decl. ¶ 10, Ex. I.)  Dr. Andreini's office is 9.1 miles and a 12 minute drive from the federal courthouse in Wheeling.  (Ogletree Decl. ¶ 11, Ex. J.) By contrast, Dr. Andreini's office is 65.7 miles and a 1 hour and 12 minute drive from the federal courthouse in Pittsburgh.  (Ogletree Decl. ¶ 12, Ex. K.)

   ▪ *Dr. Christopher Mascarenhas*: Cleveland Clinic Main Campus, 9500 Euclid Avenue, Cleveland OH 44195.  (Ogletree Decl. ¶ 13, Ex. L)

   ▪  *Dr. David H. Millit*: Retired from Wheeling Hospital and resides in Wheeling. (Declaration of Ashley Ludwick ("Ludwick Decl.") ¶ 11 (Ex. 8 hereto).)

   ▪ *Dr. Ahmad Rahbar*: Deceased.  (Maevsky Decl. ¶ 7.)

   ▪ *Dr. John Wolen*: John Wolen Surgical Associates, 21 Armory Drive, #L-1, Wheeling, WV 26003.  (Ogletree Decl. ¶ 14, Ex. M.)  Dr. Wolen's office is 2.6 miles and a 5 minute drive from the federal courthouse in Wheeling.  (Ogletree Decl. ¶ 15, Ex. N.)  By contrast, Dr. Wolen's office is 56.9 miles and a 59 minute drive from the federal courthouse in Pittsburgh.  (Ogletree Decl. ¶ 16, Ex. O.)

   ▪ *Dr. Michael Zilles*: MidHudson Regional Hospital, 200 Westgate Business Center Drive, Suite 115, Fishkill, NY 12524.  (Ogletree Decl. ¶ 17, Ex. P.)

This Court has noted that if litigating a case "in Pennsylvania would be inconvenient to the officers, employees and non-employee witnesses who may be called to testify, and the absence of such officers and employees would be very disruptive to . . . business operations, the convenience of the parties favors Defendants' venue transfer motion." *T.F.H. Publications, Inc.*, 2010 WL 4181151, at *3.  That is precisely the situation here.  This factor thus strongly favors transfer.

**5.     The Location of Books and Records Favors Transfer to the NDWV**

Wheeling Hospital's financial books and records relevant to this case—*e.g.,* documents and communications relating Medicare claims, physician contracts and other agreements, physician compensation and payments, financial records, etc.—are located at Wheeling Hospital. (Murdy Decl. ¶ 6.)  Wheeling Hospital's computer servers, where the bulk of its files and records are stored, and its information technology staff also are in Wheeling.  (Declaration of Lisabeth Shoulders ("Shoulders Decl.") ¶ 7 (Ex. 9 hereto)).  In addition, Mr. Violi's records related to his position as CEO of Wheeling Hospital are all stored either physically at the Hospital or on the Hospital's server in Wheeling.

Moreover, the books and records of most of the current and former Wheeling Hospital physicians and other persons identified in the Complaint—*e.g.,* patient files, medical records, billing files, etc.—are in Wheeling.  (Maevsky Decl. ¶ 13; Schmitt Decl. ¶ 6; Schinn Decl. ¶ 7; Swamy Decl. ¶ 7; Ludwick Decl. ¶¶ 6-7, 10 (records of Drs. Tune and Millit are in Wheeling); Shoulders Decl ¶ 7 (records of Drs. Wolen, Ybarez-Morena, and Mascarenhas are in Wheeling); McKeets Decl. ¶ 6.)  In sum, all of the private interest factors demonstrate that this case should be litigated in the NDWV.

10

### C.     The Public Interest Factors Strongly Favor Transfer to the NDWV

The public interest factors also weigh heavily in favor of transfer to the NDWV.   In evaluating the public interest factors the court "must consider the locus of the alleged culpable conduct…and the connection of that conduct to plaintiff's chosen forum."   *Saint-Gobain*, 230 F. Supp. 2d at 662 (internal quotations omitted).   Here, the "locus of the alleged culpable conduct" is *not* in dispute—the Complaint alleges that all of the operative facts occurred in the NDWV.   By contrast, there is no nexus between the Complaint's allegations and the WDPA.   This further demonstrates that public interests favor the NDWV.

#### 1.     Enforceability of a Judgment Is a Neutral Factor

There are no concerns regarding the enforceability of a judgment in this case.   This factor thus is in equipoise because it neither favors nor disfavors a transfer.

#### 2.     Practical Considerations Favor Transfer to the NDWV

This factor weighs in favor of transfer to the NDWV because the majority of the parties and potential witnesses either work at Wheeling Hospital or live or work in or near Wheeling. Naturally, it would be more convenient, expeditious and inexpensive if they could remain in Wheeling for trial and to attend other proceedings in this case.   This conclusion is bolstered by the fact that most of the documents and other sources of proof are located at Wheeling Hospital, which is only 3.3 miles from the Wheeling federal courthouse.   (Ogletree Decl. ¶ 4, Ex. C.)

By contrast, there would be no convenience, expediency or cost-reduction in requiring the many Wheeling-based parties and witnesses to trek nearly 60 miles to the federal courthouse in Pittsburgh.   This is a key factor in venue transfer cases.   *See, e.g., Ohio Art Co.*, 2010 WL 3155160, at *3 (transferring venue from the WDPA to the N.D. of Ohio because testimony "will be provided largely by current and former employees of Ohio Art, who are working and residing in Ohio

11

(approximately 60 miles from the Northern District of Ohio Courthouse and 300 miles from the [WDPA ] Courthouse)"); *Costello*, 2006 WL 1479800, at *2 (transferring venue because most witnesses "live within 25 miles of [the] Scranton [courthouse], and therefore over 100 miles from the Philadelphia courthouse where this case would be tried in the Eastern District").

In addition, Wheeling Hospital has a pending lawsuit against the Relator in the NDWV for breach of fiduciary duty and abuse of process based upon the false allegations and claims he asserted against Wheeling Hospital in this case.  (Ogletree Decl. ¶ 3, Ex. B.)  Wheeling Hospital's lawsuit against the Relator was filed before the Government filed its Complaint.  Concerns for convenience and economy dictate that this action be transferred to the NDWV where Wheeling Hospital is pursuing its related case against the Relator.  In short, this factor favors transfer.

### 3.  Relative Court Congestion Does Not Disfavor Transfer to the NDWV

According to the most recent statistics, the median time from filing to disposition of civil cases in the WDPA is 5.8 months, compared to 10.1 months in the NDWV.  *See* U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics at 18, 27 (Dec. 31, 2018).  This slight disparity (4.3 months) is negligible especially given that the Government waited nearly a year to intervene (ECF #10) and filed its Complaint more than 15 months after the Relator filed suit.  (*Compare* ECF #1 *with* ECF #19.)  *See Quicken Loans,* 217 F. Supp. 3d at 279 (difference of 3.7 months was negligible).  In any event, this "is certainly not a significant factor." *EEOC v. FedEx Ground Package Sys., Inc.*, C.A. No. WMN-14-3081, 2015 WL 790500, at *2 (D. Md. Feb. 24, 2015).  This factor thus does not disfavor transfer.

### 4.  The Local Interest Favors Transfer to the NDWV

The local interest in deciding local controversies is a key factor in deciding Defendants' motion because this lawsuit is the paradigm of a local controversy that should be decided by a

Wheeling jury—which the Government seeks to avoid by suing in this forum. The United States Supreme Court has recognized that trying a case in the venue where its outcome will have the greatest impact is an important public policy. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). In *Wheeling-Pittsburgh Steel Corp. v. U.S. E.P.A.,* No. CIV A. 98-4654, 1999 WL 111459 (E.D. Pa. March 3, 1999), the court applied this principle in transferring venue to the NDWV:

> The fourth public factor, the local interest in deciding local controversies at home, seems to be the most significant in this instance. Defendant persuasively argues that this suit is better tried in the locale in which the outcome will have the greatest impact. The … facility that is the subject of this suit is located in the [NDWV]. A court's determination …will have an effect on the citizens of that area …. Furthermore, defendant appropriately notes that citizens from the … area who may want to intervene or participate as *amici curiae* will be able to do so more readily in their local district…. Consequently, trying the case in the [NDWV] best fosters the interests of persons who, although not parties to the case, are most directly affected by its outcome.

*Id.* at *5 (internal quotation marks and citation omitted); s*ee also Turner Constr. Co. v. Indep. Excavating, Inc.,* C.A. No. 16-337, 2016 WL 1408120, *3 (W.D. Pa. April 11, 2016) (transferring venue to the NDWV, in part, because Pittsburgh taxpayers have little, if any, interest in a dispute over a construction project in West Virginia).

This case is of paramount importance to the NDWV because the mere pendency of this lawsuit, regardless of its ultimate outcome on the merits, could cripple the ability of Wheeling Hospital and other West Virginia hospitals to recruit and retain top-notch physicians and specialty practice groups to meet the underserved needs of local communities.[3] The significance of this case extends even beyond Wheeling Hospital. For example, health insurers that include Wheeling Hospital and its physicians in their coverage policies, and foundations that assist in the payment

---

[3] The importance of this lawsuit to the Wheeling community is evidenced by its coverage in the Wheeling local press. *See* Linda Comins, *Department of Justice Accuses Wheeling Hospital of Violating Stark Law, Anti-Kickback Statute,* THE INTELLIGENCER/WHEELING NEWS-REGISTER, Mar. 26, 2019, available at http://www.theintelligencer.net/ news/top-headlines/2019/03/department-of-justice-accuses-wheeling-hospital-of-violating-stark-law-anti-kickback-statute/ (visited May 8, 2019). (Ogletree Decl. ¶ 20, Ex. S.)

of medical care for indigent West Virginia patients also have an interest in the outcome of this case.  Indeed, the impact of the litigation could entirely alter the face of health care in the Wheeling area and throughout West Virginia.  Since the citizens of Wheeling have the strongest interest in this action, a Wheeling jury should decide this case.  *See United States ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 438 (D. Mass. 2007); *Lynn*, 1994 WL 185032, *2.  By the same token, "[j]ury duty is a burden that ought not to be imposed upon the people of [the Pittsburgh] community [that has] no relation to the litigation."  *Gilbert*, 330 U.S. at 508-09.

In addition, Wheeling Hospital is the ninth largest private employer in the State of West Virginia, the largest employer in Ohio County, West Virginia where Wheeling Hospital is located, and thus a significant market force in Wheeling.  (Ogletree Decl. ¶ 18, Ex. Q.)  Accordingly, the Government's efforts to hold Defendants liable under the FCA is a matter of local importance.  *See Duke Univ.*, 2017 WL 1169734, at *6 ("The city [of Durham] is inextricably tied to Duke [because it provides Durham with nearly 35,000 jobs, three times that of the next largest employer].  Whether Duke has engaged in a scheme to knowingly defraud the United States to the tune of over 100 million dollars is an issue of tremendous local importance.")  In sum, this factor strongly favors transfer to the NDWV.

### 5.   Public Policies of the Fora Favor Transfer to the NDWV

West Virginia has a shortage of health care practitioners which has prompted West Virginia lawmakers to take steps to avert a crisis.  *See* "Tax Credits for New Medical School Grads Could Help WV Recruit Physicians, Avert Shortage" (Ogletree Decl. ¶ 19, Ex. R.)  West Virginia hospitals face difficulty in recruiting quality physicians, and Wheeling Hospital is no exception.

Unfortunately, this lawsuit only makes matters worse.  The Complaint calls out—*by name*—numerous physicians who are wrongly accused of benefitting from illegal compensation

14

arrangements with Wheeling Hospital.  (CII ¶¶ 70-96, 104, 112, 128.)  The NDWV thus has an interest in resolving these accusations which threaten to derail West Virginia's initiative to recruit and retain physicians at Wheeling Hospital who might otherwise seek employment elsewhere.

In addition, West Virginia licenses both Wheeling Hospital and its physicians.  *See, e.g.,* W. Va. Code §§ 30-1C-1, *et seq.*; §§ 16-5B-1, *et seq.*  Because the Government's allegations may impact state licensure, the Wheeling community has a strong interest in the resolution of this action.  Moreover, Wheeling Hospital's compliance with state and federal licensure, billing, and other requirements has greater local importance in the NDWV than the WDPA.  *See T.F.H. Publications, Inc.*, 2010 WL 4181151, at \*4.  This factor favors transfer to the NDWV.

### 6.     The Familiarity of the Trial Judge with Applicable State Law

The CII asserts two common-law claims. To the extent state law is deemed to govern such claims, this factor also favors transferring this case to the NDWV.

### CONCLUSION

As explained above, the Court should transfer this case to the NDWV pursuant to 28 U.S.C. § 1404(a) because the NDWV is a proper transferee forum in which this case originally could have been brought.  In addition, analysis of the private and public interest factors, discussed above, overwhelming demonstrate that Defendants have met their preponderance burden to show that the convenience of the parties and witnesses and the interests of justice would be better served by litigating this case in the NDWV—where all of the operative facts allegedly occurred, where Defendants and most of the witnesses and documents are located, where the Government's claims arose, and where there is a strong local interest in resolving this local controversy in a West Virginia court.  Accordingly, Defendants' motion should be granted.

15

Date: May 10, 2019

Respectfully submitted,

*/s/ George E. Horn, Jr*

George E. Horn, Jr. (MI Bar. No. P40495)
Barnes & Thornburg LLP
700 1st Source Bank Center
100 North Michigan
South Bend, IN 46601-1632
Telephone:    (574) 237-1189
Facsimile:    (574) 237-1125
George.Horn@btlaw.com

*/s/Roscoe C. Howard, Jr.*

Roscoe C. Howard, Jr.
Barnes & Thornburg, LLP
1717 Pennsylvania Avenue, NW, Suite 500
Washington, D.C. 20006-4623
Telephone: (202) 371-6378
Roscoe.Howard@btlaw.com
*pro hac vice motion forthcoming*

*/s/Meena T. Sinfelt*

Meena T. Sinfelt
Barnes & Thornburg, LLP
1717 Pennsylvania Avenue, NW, Suite 500
Washington, D.C. 20006-4623
Telephone: (202) 371-6368
Meena.Sinfelt@btlaw.com
*pro hac vice motion forthcoming*

*Attorneys for Defendant*
*Wheeling Hospital, Inc.*

*/s/ Stephen S. Stallings*

Stephen S. Stallings, Esq.
PA ID No. 205131
attorney@stevestallingslaw.com
The Law Offices of Stephen S. Stallings,
Esq.
310 Grant Street, Suite 3600
Pittsburgh, PA 15219
T: 412.322.7777
F: 412.322.7773

*/s/ Kerry Brainard Verdi*

Kerry Brainard Verdi (*pro hac pending*)

16

Benjamin R. Ogletree (*pro hac forthcoming*)
Verdi & Ogletree PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
phone:  202.449.7703
fax:  202.449.7701
kverdi@verdiogletree.com
bogletree@verdiogletree.com

*Attorneys for Defendants*
*R&V Associates, Ltd. And Ronald L. Violi*

## CERTIFICATE OF SERVICE

I, Stephen S. Stallings, certify under penalty of perjury that on May 10, 2019, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record in this action registered to receive CM/ECF notification.

By: */s/ Stephen S. Stallings*
Stephen S. Stallings
P.A. Bar No. 205131

*Attorney for Defendants*
*R&V Associates, Ltd. And Ronald L. Violi*

17