# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| LOUIS LONGO, | ) | CIVIL ACTION NO. 17-1654 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WHEELING HOSPITAL, INC., | ) | |
| R & V ASSOCIATES, LTD., and | ) | |
| RONALD L. VIOLI, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO TRANSFER VENUE

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION………………………………………………………………………1

II. BACKGROUND……………………………………………………………………….1

III. DISCUSSION…………………………………………………………………………3

    A. The Private Factors……………………………………………………………4

        1. The Parties' Forum Preferences……………………………………………...4

        2. Where the Claims Arose……………………………………………………..6

        3. The Convenience of the Parties as Indicated by their
        Respective Physical and Financial Conditions…………………………………8

        4. The Convenience of Witnesses……………………………………………..10

        5. The Location of Books and Records………………………………………..11

    B. The Public Factors……………………………………………………………12

        1. The Enforceability of a Judgment…………………………………………..12

        2. Practical Considerations that Could Make the Trial
        Easy, Expeditious, or Inexpensive…………………………………………….12

        3. Administrative Difficulty Resulting from Court Congestion…………………13

        4. Local Interest in Deciding Local Controversies at Home……………………13

        5. Public Policies of the Fora.…………………………………………………15

        6. The Familiarity of the Trial Judge with Applicable State Law……………….15

IV. CONCLUSION………………………………………………………………………15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Byrd v. Johnston*, 07-cv-2963, 2007 WL 4373047, *6 (E.D. Pa. Dec. 14, 2007)………………..11

*CentiMark Corp. v. Tecta Am. Corp.*, 08-cv-593,
2008 WL 11381834 (W.D. Pa. Nov. 7, 2008)………………………………………………….9

*Davis v. Am. Viscose Corp.*, 159 F. Supp. 218 (W.D. Pa. 1958)………………………………..8

*Dilmore v. Alion Sci. & Tech. Corp.*, 11-cv-72,
2011 WL 1576021 (W.D. Pa. Apr. 21, 2011)…………………………………………………11

*Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618 (E.D. Pa. 2018)……………………11

*E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969 (3d Cir. 1988)…………………………………………...13

*Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955)……………………………………………….4

*Gulf Oil v. Gilbert*, 330 U.S. 501 (1947)………………………………………………………...14

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)………………………………..3, 4, 10

*Lynn v. Consol. Rail Corp.*, No. CIV. A. 94-408,
1994 WL 185032 (E.D. Pa. May 13, 1994)……………………………………………………...15

*Quantum Plating, Inc. v. Central Freight Lines, Inc.*, No. 09-cv-166,
2011 WL 673913 (W.D. Pa. Feb. 17, 2011)……………………………………………………….4

*Shiptoski v. SMG Grp., LLC*, 16-cv-1216,
2018 WL 4939280 (M.D. Pa. Sept. 26, 2018)……………………………………………………9

*Shiptoski v. SMG Grp., LLC*, 16-cv-1216,
2018 WL 4934077 (M.D. Pa. Oct. 11, 2018)……………………………………………………..9

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970)………………………………...4, 10

*Turner Constr. Co. v. Indep. Excavating, Inc.*, 16-cv-337,
2016 WL 1408120 (W.D. Pa. April 11, 2016)…………………………………………………...14

*United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*,
09-cv-1002, 2013 WL 6017329 (M.D. Fla. Nov. 13, 2013)……………………………………..11

*United States ex rel. Emanuele v. Medicor Assocs.*,
242 F. Supp. 3d 409 (W.D. Pa. 2017)……………………………………………………1, 11

*United States ex rel. FLFMC, LLC v. Ohio Art*, 10-cv-230,
2010 WL 3155160 (W.D. Pa. July 30, 2010)……………………………………………...8

*United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88 (3d Cir. 2009)……………..2

*United States ex rel. Ondis v. City of Woonsocket*,
480 F. Supp. 2d 434 (D. Mass. 2007)……………………………………………………14

*United States ex rel. Penizotto v. Bates East Corp.*,
No. CIV. A. 94-3626, 1996 WL 417172 (E.D. Pa. July 18, 1996)………………………...5, 6

*United States ex rel. Thomas v. Duke Univ.*, No. 4:13-CV-17,
2017 WL 1169734 (W.D. Va. Mar. 28, 2017)…………………………………………………14

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
771 F. Supp. 2d 42 (D.D.C. 2011)………………………………………………………...5

*United States v. Gwinn*, 06-cv-00267, 2008 WL 867927 (S.D.W.V. Mar. 31, 2008)……………..5

*United States v. Klearman*, 82 F. Supp. 2d 372 (E.D. Pa. 1999)…………………………………5

*United States v. Metzinger*, 94-cv-7520, 1996 WL 530002 (E.D. Pa. Sept. 17, 1996)…………...5

*United States v. Rogan*, 02-cv-3310, 2006 WL 8427270 (N.D. Ill. Oct. 2, 2006)………………15

*United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008)……………………………………………15

*United States v. T.F.H. Publications, Inc.*, 10-cv-437,
2010 WL 4181151 (W.D. Pa. Oct. 20, 2010)…………………………………………...14, 15

*Wheeling-Pittsburgh Steel Corp. v. U.S. E.P.A.*, No. CIV. A. 98-4654,
1999 WL 111459 (E.D. Pa. Mar. 3, 1999)………………………………………………15

*York Grp., Inc. v. Pontone*, No. CIV.A. 10-1078,
2014 WL 3735157 (W.D. Pa. July 28, 2014)……………………………………………14

## <u>STATUTES AND RULES</u>

28 U.S.C. § 1404(a)……………………………………………………………...3, 8, 10

31 U.S.C. §§ 3729 *et seq*..…………………………………………………1, 3, 10, 13

42 U.S.C. § 1320a-7b……………………………………………………………...1, 2

42 U.S.C. § 1395nn………………………………………………………………..1

Fed. R. Civ. P. 13………………………………………………………………..3

Fed. R. Civ. P. 45………………………………………………………………10

## I.      INTRODUCTION

Defendants, two out of three of whom reside in this District, have asked the Court to transfer this whistleblower lawsuit, filed by another resident of this District, to another courthouse 59 miles away.  They have not met the substantial burden required to disturb Plaintiffs' choice of this forum.  The United States, acting through the Department of Justice's Civil Division and the U.S. Attorney's Office for the Western District of Pennsylvania, and Relator Louis Longo respectfully request that the Court deny Defendants' motion.

## II.      BACKGROUND

On December 27, 2017, Louis Longo, a resident of this District for nearly 60 years, *see* Declaration of Louis Longo (attached as Exhibit ("Ex.") 1) ¶ 3, filed this whistleblower lawsuit in this Court under the *qui tam* provisions of the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729 *et seq.*  Defendants are (1) Wheeling Hospital, Inc. ("Wheeling Hospital"), an acute care hospital located in Wheeling, West Virginia; (2) R & V Associates, Ltd. ("R & V"), a Pittsburgh consulting company that has managed the hospital since 2006; and (3) Ronald Violi, a Pittsburgh resident who is one of R & V's principals and who has served as the hospital's Chief Executive Officer since 2006.  Relator had served as the hospital's Executive Vice President from 2011 to 2015.  *See* Ex. 1 ¶ 4.  He alleged that Wheeling Hospital, under the direction and control of R & V and Violi, submitted thousands of Medicare claims that were false because they resulted from patient referrals that violated the physician self-referral law (the "Stark Law"), 42 U.S.C. § 1395nn, and the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b.[1]  *See* ECF No. 1.

---

[1] The Stark Law prohibits entities that provide "designated health services," such as hospitals, from billing Medicare for such services referred by a physician in a "financial relationship" with that entity, unless that relationship satisfies an exception to the statute.  42 U.S.C. §§ 1395nn(a)(1), (g)(1); *United States ex rel. Emanuele v. Medicor Assocs.*, 242 F. Supp. 3d 409, 417-18 (W.D. Pa. 2017).  The AKS prohibits the knowing and willful payment of remuneration (*i.e.*, anything of value) to induce the referral of items or services reimbursable under a federal health care program.  42 U.S.C. § 1320a-7b(b).  Claims submitted in violation of the Stark Law or AKS are deemed false

The United States, in an investigation conducted jointly by the Department of Justice's Civil Division and the U.S. Attorney's Office for this District, investigated Relator's allegations. It filed its Notice of Partial Intervention on November 30, 2018.  This Court unsealed the case on December 20, 2018, and ordered the United States to file its Complaint in Intervention by March 25, 2019, *see* ECF Nos. 11, 13.  Defense counsel inquired when the United States anticipated filing that complaint.  As a professional courtesy, undersigned government counsel responded that they likely would do so on March 25 itself.

On March 12, 2019, shortly before that previewed filing date, Wheeling Hospital sued Relator for filing this case.  It did so not through the assertion of counterclaims in this lawsuit, but through a new lawsuit that it filed in the Northern District of West Virginia (the "Wheeling Lawsuit").  *See* Complaint, *Wheeling Hospital, Inc. v. Longo*, 19-cv-00032 (N.D.W.V.) (included in Defendants' filings at ECF No. 27-1, Ex. B).   The hospital asserted two claims against Relator in the Wheeling Lawsuit: breach of fiduciary duty and abuse of process.  Both arose principally out of Relator's filing of this case in this Court, *see id.* pp. 7-9.  Wheeling Hospital alleged in the Wheeling Lawsuit, among other things, that Relator never alerted it to any fraud concerns during his employment at the hospital, *id.* ¶¶ 26-27; that his allegations in this *qui tam* case are "false," *id.* ¶ 31; and that the compensation arrangements at issue in this *qui tam* case were "lawful," *id.* ¶ 41.  All of those statements contradicted allegations in the *qui tam* complaint that Relator had previously filed with this Court.  *See, e.g.*, ECF No. 1 ¶¶ 99, 167-80, 181-86.

The United States filed its Complaint in Intervention in this case on March 25, 2019, and served it on Defendants the same day.  It alleges that Wheeling Hospital retained R & V and Violi in 2006 to reverse the hospital's recurring financial losses.  *See* ECF No. 19 ¶¶ 57-58.

---

for purposes of the FCA.  *See United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009); 42 U.S.C. § 1320a-7b(g).

R & V and Violi succeeded in that respect, generating substantial profits for the hospital, largely by hiring physicians to capture their patient referrals and the resulting revenues. *See id.* ¶¶ 63, 65. In doing so, Defendants systematically entered into physician compensation arrangements that did not satisfy any exception to the Stark Law or that violated the AKS. *See generally id.* Most notably, Defendants routinely paid compensation to physicians that took into account the volume or value of those physicians' hospital referrals. *Id.* ¶¶ 70-116.

On May 3, 2019, Relator moved to dismiss the West Virginia Lawsuit. He argued that the hospital's claims there failed as a matter of law and, if cognizable, "are compulsory counterclaims under Rule 13, which must be asserted in the case filed first in Pennsylvania" (*i.e.*, this case). *See* Memorandum, *Wheeling Hospital, Inc. v. Longo*, 19-cv-00032 (N.D.W.V.), ECF No. 19 (attached as Ex. 2) at 3. That motion is pending.

One week later, Defendants moved to transfer this case to the U.S. District Court for the Northern District of West Virginia. *See generally* ECF No. 27 ("Def. Br.").

## III.   DISCUSSION

An FCA lawsuit "may be brought in any judicial district in which . . . any one defendant can be found, resides, [or] transacts business," 31 U.S.C. § 3732(a). The statute provides for nationwide service of process. *See* 31 U.S.C. § 3731(a). The parties agree that this case could have been filed in either district at issue.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted). "The decision

to transfer is in the court's discretion, but a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quotation marks and citation omitted).

The Third Circuit has set forth a series of private and public factors that courts should consider in ruling on motions to transfer venue.  The private factors are "(1) each party's forum preference; (2) where the claim arose; (3) the convenience of the parties as indicated by their relative physical and financial conditions; (4) the convenience of the witnesses; and (5) the locations of books and records." *Quantum Plating, Inc. v. Central Freight Lines, Inc.*, No. 09-cv-166, 2011 WL 673913, at *6 (W.D. Pa. Feb. 17, 2011) (citing *Jumara*, 55 F.3d at 879). The public factors include "(1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citing *Jumara*, 555 F.3d at 879).

A.    The Private Factors

1.    *The Parties' Forum Preferences*

The Third Circuit has long recognized that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (quotation marks and modifications omitted); *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) (same); *Quantum Plating, Inc.*, 2011 WL 673913, at *6 ("Courts have uniformly held that the plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed.").

Courts have differed in how they apply this principal to FCA *qui tam* cases, where the United States is the real party in interest.  Some give the rule its traditional forceful application,

4

concluding that "[t]he United States should not be denied its choice of forum in a case in which it is the plaintiff."  *See United States ex rel. Penizotto v. Bates East Corp.*, No. CIV. A. 94-3626, 1996 WL 417172, at *2-3 (E.D. Pa. July 18, 1996) (giving "the choice of forum of the government . . . the greatest weight"); *see also United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 47 (D.D.C. 2011) ("[B]ecause the United States is the real party in interest in a qui tam action filed by a relator, the United States' choice of forum is entitled to principal deference."); *United States v. Metzinger*, 94-cv-7520, 1996 WL 530002, at *5 (E.D. Pa. Sept. 17, 1996) (denying a defendant hospital's motion to transfer an FCA lawsuit, and observing that "[t]his Court must give great deference to" the United States' choice of forum).  Others do so as long as "the Government neither chose a foreign forum nor one bearing little or no relation to the cause of action."  *See United States v. Gwinn*, 06-cv-00267, 2008 WL 867927, at *18 (S.D.W.V. Mar. 31, 2008) ("Here, neither [defendant has] established that the balance strongly weighs in their favor, and thus the Court will not disturb the Government's choice of forum," which the court gave "considerable weight and deference.").  Still others, cited by Defendants, *see* Def. Br. at 4-5, reason that the United States is a resident of all districts, and grant less weight to the government's choice, but still may grant that choice "significant weight." *See United States v. Klearman*, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1999).

Plaintiffs respectfully submit that their choice of forum is entitled to its traditional deference, at least in these circumstances, where Relator filed a *qui tam* case in his home forum and that of the majority of Defendants (in addition to the other connections to this District described in this brief); where the United States shares that choice; and where the forum to which Defendants seek transfer is only a one-hour drive away.  Plaintiffs recognize that, as compared with the United States' preference, a relator's choice of forum may receive less weight in an

intervened FCA *qui tam* case like this one, *Penizotto*, 1996 WL 417172, at *2-3.  But to the

extent Relator's preference carries some weight, he maintains his choice of this forum.

By their motion, Defendants have made clear that they prefer the Northern District of

West Virginia, even though R & V and Violi reside in this District.

### 2.    *Where the Claims Arose*

Defendants insist this factor "favors transfer because the Government's claims arose . . .

in the [Northern District of West Virginia] and have no connection to th[is District]."  Def. Br. at

6.  In fact, the relevant conduct occurred across multiple districts, including this one.

Defendants' brief understates the centrality of R & V and Violi to the United States'

claims in this case, and the significance of their Pittsburgh residence, *see id.* at 2.  In 2006, while

searching for new management, Wheeling Hospital looked to this District and retained R & V.

*See* ECF No. 19 ¶ 58.  For the last thirteen years, Violi has been the face of Wheeling Hospital.

He has been the chief decisionmaker, and, critically for this case, the negotiator and signatory of

all of the hospital's physician compensation arrangements.  *Id.* ¶ 10.  While Defendants have

submitted a declaration stating that Violi "has an apartment in [Wheeling] where he lived during

the week while working at the hospital" (signed not by Violi himself but by the hospital's Chief

Financial Officer), ECF No. 27-2, their brief is silent on the extent to which Violi performed

hospital work from Pittsburgh.  According to Relator, who served as the hospital's Executive

Vice President from 2011 to 2015, Violi spent one day per week doing so at R & V's Pittsburgh

office.  *See* Ex. 1. ¶¶ 6-7.  Relator recalls meeting with Violi at that office at least three times on

hospital-related business.  *Id.* ¶¶ 5, 8.  He also recalls phone calls to Violi in Pittsburgh, to whom

hospital staff faxed documents for review.  *Id.* ¶¶ 9-11.  In a motion as to which they carry the

burden, Defendants' submission is also silent on the extent to which others at R & V, including

Violi's Pittsburgh-based partner, Vincent Deluzio, *see* ECF No. 19 ¶¶ 9, 59, 97, 134-35, performed hospital work out of Pittsburgh.

Under R & V's and Violi's direction, Wheeling Hospital also frequently recruited physicians from this District.  One prominent example is Dr. Adam Tune, a physician whose relationship with Defendants is detailed in the United States' Complaint in Intervention, *see* ECF No. 19 ¶¶ 70-96.  From 2012 to 2013, Defendants recruited and attempted to negotiate a series of compensation arrangements with Dr. Tune in order to capture his patient referrals.  *Id.* ¶ 71.  Dr. Tune was at that time, and remains, a resident of this District, *id.*  Those negotiations culminated in what the United States has alleged to be an unlawful compensation arrangement.  Another physician whom Defendants recruited from this District is Dr. Lowell Shinn, *id.* ¶ 104, who filed a declaration in support of Defendants' motion, ECF No. 27-5.  *See* Press Release (Feb. 3, 2012), https://wheelinghospital.org/about/news/newsdet.aspx?n=491 (Dr. Shinn was recruited from Washington, Pennsylvania).

Defendants also marketed to and treated patients in this District.  *See, e.g.*, Wheeling Hospital: About us, https://wheelinghospital.org/about/ (explaining that the hospital serves "parts of Pennsylvania," which, given its location, presumably refers to this District).

Defendants repeatedly availed themselves of this District in matters relevant to this case, including by Wheeling Hospital's retention of R & V and Violi; R & V's and Violi's performance of hospital work from Pittsburgh; Defendants' recruitment of physicians from this District into problematic compensation arrangements; and Defendants' marketing to and treating Pennsylvania patients.  Their claim that this case has "no connection to" this District therefore is untenable.

3.    *The Convenience of the Parties as Indicated by their Respective Physical and Financial Conditions*

Two of the private factors listed by the Third Circuit relate to convenience – of the parties and of witnesses.  As detailed below, application of these factors also weighs against transfer.  But  these two districts differ minimally with respect to the "convenience" factors for the simple reason that the two courthouses are separated by a mere 59 miles (less than half the 130-mile distance between this Court and the Erie courthouse located in this same District).  *See Davis v. Am. Viscose Corp.*, 159 F. Supp. 218, 220 (W.D. Pa. 1958) ("I think § 1404(a) should not be invoked for a transfer between two courts such as Pittsburgh and Harrisburg [which are separated by more than 200 miles] where the relatively short distances involved may be traversed quickly and comfortably, and the balance of inconvenience, if any, in favor of the defendant and its employee-witnesses is relatively minor.").  Case law relied upon by Defendants recognizes the distance at issue here as "convenient" under the transfer analysis.  *See United States ex rel. FLFMC, LLC v. Ohio Art*, 10-cv-230, 2010 WL 3155160, at *3 (W.D. Pa. July 30, 2010) (convenience weighed in favor of transferring case to a courthouse located "approximately 60 miles" from witnesses) (cited in Def. Br. at 5, 6, 7, 11).

Pittsburgh and Wheeling are neighbors in the Upper Ohio Valley.  Wheeling's official website advertises that the city is "55 miles from downtown Pittsburgh."  *See* About Wheeling, https://www.wheelingwv.gov/about-wheeling.  A local business association likewise touts that "Wheeling has people, easy access to the amenities of Pittsburgh and local benefits such as good schools[.]"  Regional Economic Development Partnership: Why Wheeling, http://redp.org/why-wheeling/.  It therefore is not surprising that when Wheeling Hospital was looking for new management in 2006, it looked next door in Pittsburgh and hired R & V and Violi.  According to its press office, Wheeling Hospital and Children's Hospital of Pittsburgh have since collaborated

8

repeatedly "to enhance pediatric care in the Upper Ohio Valley."  *See* Press Release (June 12, 2014), https://wheelinghospital.org/about/news/newsdet.aspx?n=720.

To the extent the two districts differ at all with respect to the parties' convenience, this is the more convenient forum, as three of the four non-governmental parties to this lawsuit reside here (Relator, R & V, and Violi).  And while Wheeling Hospital is the lone Wheeling-based party, its convenience is entitled to less weight than the others'.  As a large corporate entity with greater resources, it would be less inconvenienced by litigating this case outside of its hometown (albeit only slightly outside) than Relator, R & V, and Violi would be.  *See, e.g.*, *Shiptoski v. SMG Grp., LLC*, 16-cv-1216, 2018 WL 4939280, at *4 (M.D. Pa. Sept. 26, 2018) (adding that any inconvenience in "litigat[ing] in a forum that [is] a little more than an hour" away is "minimal"), *report and recommendation adopted*, 2018 WL 4934077 (M.D. Pa. Oct. 11, 2018); *CentiMark Corp. v. Tecta Am. Corp.*, 08-cv-593, 2008 WL 11381834, at *3 (W.D. Pa. Nov. 7, 2008).

That said, Wheeling Hospital's claim that this forum is inconvenient is profoundly undermined by the fact that its 2016 contract extension with R & V provided that, in the event of a dispute between them, either party could file suit in the Northern District of West Virginia or in this District.  In other words, the hospital consented to litigation in this District for disputes involving R & V, which appropriately describes this case.  Its claim that this Court is now inconvenient is difficult to understand.

For their part, R & V and Violi have not explained how Wheeling would be a more convenient forum for them than their home district.  Notably, Violi's counsel recently represented to this Court their belief that Violi's health will not permit him to testify in a deposition within the next three months, *see* ECF No. 35.  That position is difficult to reconcile with Violi's present argument that it would be more convenient for him to litigate and try this

case in Wheeling than in his hometown of Pittsburgh.  In any case, to whatever degree this District may impose an incrementally small inconvenience on Defendants, the Third Circuit has clarified that "[t]here is nothing in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue."  *Shutte*, 431 F.2d at 25 (citation omitted).

### 4.    *The Convenience of Witnesses*

The convenience of witnesses is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  *Jumara*, 55 F.3d at 879.  Plaintiffs are aware of no potential witnesses in this case who would be available for trial in one of the two districts at issue but not the other, and Defendants have not identified any.  As noted earlier, the FCA provides for nationwide service of process.  *See* 31 U.S.C. § 3731(a).  Even if it did not, the 55-mile distance between Wheeling and Pittsburgh falls well within the 100-mile range of subpoenas for trial testimony under Fed. R. Civ. P. 45(c)(1).

Assuming *arguendo* that the convenience of witnesses were relevant here, it still would not weigh in favor of transfer, as there are a number of important witnesses in this District. Violi, the chief architect of the alleged fraud, resides here.  So does Violi's partner at R & V, Vincent Deluzio.  *See* R & V Associates - Vincent C. Deluzio, http://www.rvassoc.net/managing-directors/vincent-c-deluzio.  So does Dr. Tune, whose testimony about his interactions and financial arrangements with Defendants, *see* ECF No. 19 ¶¶ 70-96, likely will play an important role in the litigation of the United States' claims.  And so does Relator, who allegedly raised concerns about these compensation arrangements while a hospital employee, *see* ECF No. 19 ¶ 150.  While Defendants are correct that certain current and former Wheeling Hospital

executives likely would testify at trial, too, they have failed to demonstrate that this District is so inconvenient that, in all the circumstances, Plaintiffs' choice of forum should be disregarded.[2]

5.      *The Location of Books and Records*

There is no difference between this District and the Northern District of West Virginia when it comes to the location of documentary proof.  Wherever this case is litigated, all parties will collect and produce documents electronically, as Defendants started doing during the United States' investigation.  As courts in this district have recognized, "this factor need not be weighed heavily because much of the discovery . . . as in many modern cases, can be exchanged electronically, minimizing or eliminating any difference in access to documents caused by geography."  *Dilmore v. Alion Sci. & Tech. Corp.*, 11-cv-72, 2011 WL 1576021, at *8 (W.D. Pa. Apr. 21, 2011) (quotation marks omitted); *see also, e.g.*, *Edwards v. Equifax Info. Servs.*, *LLC*, 313 F. Supp. 3d 618, 623–24 (E.D. Pa. 2018) ("This factor has lost much of its significance in modern litigation . . . .  The location of computer servers housing such databases simply lacks real world significance, because document production does not involve physical search and retrieval, but electronic download"); *Byrd v. Johnston*, 07-cv-2963, 2007 WL 4373047, *6 (E.D. Pa. Dec. 14, 2007) (same).  Wheeling Hospital's attorneys previously indicated that they had

_____

[2] Defendants overstate considerably the supposed inconvenience of this forum to certain other Wheeling Hospital physicians discussed in the Complaint in Intervention, *see* Def. Br. at 7-10.  The demands on those doctors' time would be nearly identical in both venues.  As all depositions presumably will take place in locations convenient for witnesses, any depositions of those physicians likely would take place in Wheeling if that is their preference.  Their time preparing for those depositions would be the same.  The only perceptible difference is that, if those physicians were to testify at trial, they would spend an extra hour driving to court and an extra hour driving back – likely in 2020 at the earliest.  That said, it is far from clear that those physicians would even need to testify at trial.  The question of whether Defendants can satisfy their burden of proving compliance with an exception to the Stark Law is one that this Court, like prior courts in similar cases, may be able to resolve at summary judgment.  *See, e.g.*, *United States ex rel. Emanuele v. Medicor Assocs.*, 242 F. Supp. 3d 409, 426 (W.D. Pa. 2017); *United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 09-cv-1002, 2013 WL 6017329, at *8-9 (M.D. Fla. Nov. 13, 2013).  Defendants have not specified what other "court proceedings" these physicians would need to attend, let alone with such frequency as to "create a danger that patients would seek care from other providers," Def. Br. at 8.

already collected and electronically uploaded for review and production many if not the majority of relevant documents in 2018.

      B.    <u>The Public Factors</u>

           1.    *The Enforceability of a Judgment*

The parties agree that the two districts do not differ with respect to the enforceability of a judgment, *see* Def. Br. at 11.

           2.    *Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive*

Defendants' argument that the "practical considerations" factor weighs in favor of transfer is predominantly a rehash of their arguments, addressed above, relating to the convenience of parties and witnesses and the location of documents. *See* Def. Br. at 11-12.

Their sole non-redundant argument concerns the Wheeling Lawsuit, which Wheeling Hospital filed two months ago against Relator in the Northern District of West Virginia. Defendants argue that the hospital filed its complaint in that case before the United States filed its Complaint in Intervention here, and that "convenience and economy" therefore weigh in favor of transferring this case to that district, *see* Def. Br. at 12. But the hospital filed that case when it was on full notice of this pending *qui tam* case, the fact that the United States had partially intervened, and the United States' plan to file its Complaint in Intervention in a matter of weeks. And the Wheeling Lawsuit not only arises from the same facts as this case; as Defendants acknowledge, it arises from Relator's filing of this case itself, *see id.* Those circumstances strongly suggest that Wheeling Hospital filed the Wheeling Lawsuit precisely to justify seeking transfer of this case from this District to one that the hospital evidently views as more favorable. As this matter was pending before the Wheeling Lawsuit concerning the same issues, under the "first-filed rule," the hospital's filing of that case should not diminish the deference this Court

gives to Plaintiffs' choice of forum here.  *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971-72, 976 (3d Cir. 1988) (In cases of concurrent federal jurisdiction, "the court which first has possession of the subject must decide it," though this rule does not apply where the party who filed the first suit did so "in anticipation of the opposing party's imminent suit in another less favorable forum."); *see also* 31 U.S.C. § 3731(c) (the United States' Complaint in Intervention relates back to the date Relator filed his *qui tam* complaint for statute of limitations purposes).

       3.      *Administrative Difficulty Resulting from Court Congestion*

As Defendants acknowledge, *see* Def. Br. at 12, on average, this Court resolves cases in less than six months, as compared with more than ten months for the Northern District of West Virginia.  *See* U.S. District Courts – Civil Statistical Tables, *available at* https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2018/12/31.  This factor therefore weighs against transfer.

       4.      *Local Interest in Deciding Local Controversies at Home*

Defendants argue that the Northern District of West Virginia alone has an interest in this matter because the hospital is based there.  Def. Br. at 12-13.  Plaintiffs do not dispute that district has an interest in this case.  But this District has a substantial one, too.

First, as discussed above, a significant amount of the relevant conduct took place in this District.  This case is therefore best understood as regional in nature.  Defendants highlight an article about this case from a Wheeling newspaper, *see id.* at 14 n.3.  But the Pittsburgh Post-Gazette likewise ran an above-the-fold article about the Complaint in Intervention.  *See* Torsten Ove, *Wheeling Hospital Accused in Kickback Lawsuit*, PITTSBURGH POST-GAZETTE, Mar. 26, 2019 (discussing the involvement of "Grant Street-based R&V and Mr. Violi, who lives in O'Hara and was formerly CEO at Children's Hospital of Pittsburgh"), *earlier online version*,

https://www.post-gazette.com/news/crime-courts/2019/03/25/Justice-Department-lawsuit-Wheeling-Hospital-r-v-associates-consultant-firm-false-claims-act-suit/stories/201903250087.

Second, Districts have a strong interest in ensuring that their residents are complying with federal laws.  *See, e.g.*, *United States v. T.F.H. Publications, Inc.*, 10-cv-437, 2010 WL 4181151, at *4 (W.D. Pa. Oct. 20, 2010).  As discussed above, two out of three Defendants, alleged to have committed systematic violations of federal laws, reside in and engaged in relevant conduct in this District.  Relator lives here, too.  Defendants' claim that Wheeling alone has an interest in this case is refuted by the presence here of a majority of the parties.  *See, e.g.*, *York Grp., Inc. v. Pontone*, No. CIV.A. 10-1078, 2014 WL 3735157, at *14-15 (W.D. Pa. July 28, 2014) (denying transfer and observing that "local interest" factor was neutral where case arose in New York and involved New York parties but also involved Pennsylvania residents).

The cases that Defendants cite, unlike this one, involved truly localized cases with little or no connection to the original district.  In the seminal Supreme Court case of *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947), for example, the plaintiff lived in Virginia, the controversy occurred in Virginia, the defendant was incorporated in Pennsylvania, and yet the case was filed in New York.  *Id.* at 502–03.  In *United States ex rel. Thomas v. Duke Univ.*, No. 4:13-CV-17, 2017 WL 1169734 (W.D. Va. Mar. 28, 2017), all of the parties – the relator and all individual and entity defendants – were from the transferee venue, and "none of the alleged events took place in the" original forum.  *Id.* at *1.  And *Turner Constr. Co. v. Indep. Excavating, Inc.*, 16-cv-337, 2016 WL 1408120 (W.D. Pa. April 11, 2016), concerned a singularly local construction project, with parties all headquartered outside of the original district, and where there were four cases pending in the transferee district about the same construction before the plaintiff filed suit.[3]

---

[3] The rest of the cases cited by Defendants, *see* Def. Br. at 12-14, are similarly off-point.  *See United States ex rel. Ondis v. City of Woonsocket*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (only counsel was from the transferring

14

5.      *Public Policies of the Fora*

Defendants cite only one case relating to their "public policy" argument.  That decision, however, concluded that "preferences of local policy . . . do not weigh in favor of either party." *T.F.H. Publications, Inc.*, 2010 WL 4181151, at *4 (cited in Def. Br. at 15).  Plaintiffs respectfully request that the Court disregard Defendants' unsupported (and, in Plaintiffs' view, unfounded) proclamations about the public impact of this lawsuit, *see* Def. Br. at 13-15.  The public policies of West Virginia concerning physician recruitment and compensation are not inconsistent with the enforcement of federal healthcare laws.  And, contrary to Defendants' suggestion, Def. Br. at 15, this case is no more about the state licensure of West Virginia physicians than it is about R & V's compliance with Pennsylvania commercial laws.

6.      *The Familiarity of the Trial Judge with Applicable State Law*

The United States has not asserted any claims governed by state law.  The Complaint in Intervention's FCA claims are governed by federal law, and the claims for payment by mistake and unjust enrichment are governed by federal common law, *see United States v. Rogan*, 02-cv-3310, 2006 WL 8427270, at *21 (N.D. Ill. Oct. 2, 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008).  This factor is not relevant here and therefore does not weigh in favor of transfer.

IV.    **CONCLUSION**

For these reasons, Defendants have not satisfied their burden of overcoming Plaintiffs' choice of this District as the forum of this lawsuit.  Plaintiffs respectfully request that the Court deny Defendants' motion to transfer venue.

---

district); *Wheeling-Pittsburgh Steel Corp. v. U.S. E.P.A.*, No. CIV. A. 98-4654, 1999 WL 111459, at *5 (E.D. Pa. Mar. 3, 1999) (local interest favored transfer where plaintiff manufacturing plant filed suit outside of home district, the venue where prior related disputes had been resolved); *Lynn v. Consol. Rail Corp.*, No. CIV. A. 94-408, 1994 WL 185032 (E.D. Pa. May 13, 1994) (plaintiff filed outside of his home district).

Dated:  May 17, 2019                              Respectfully submitted,

                                                  JOSEPH H. HUNT
                                                  Assistant Attorney General
                                                  Civil Division

                                                  SCOTT W. BRADY
                                                  United States Attorney

                                                  /s/ Rohith V. Srinivas
                                                  MICHAEL D. GRANSTON
                                                  TRACY L. HILMER
                                                  ROHITH V. SRINIVAS
                                                  Attorneys, Civil Division
                                                  U.S. Department of Justice
                                                  175 N Street, N.E.
                                                  Washington, D.C. 20002
                                                  (202) 307-6604
                                                  Rohith.V.Srinivas@usdoj.gov

                                                  /s/ Colin J. Callahan
                                                  COLIN J. CALLAHAN
                                                  Assistant United States Attorney
                                                  Joseph F. Weis Jr. United States Courthouse
                                                  700 Grant Street, Suite 4000
                                                  Pittsburgh, PA 15219
                                                  (412) 894-7426
                                                  Colin.Callahan@usdoj.gov

                                                  *Attorneys for the United States*

16

/s/ Jeffrey W. Dickstein
JEFFREY W. DICKSTEIN
Phillips and Cohen LLP
200 S. Biscayne Blvd., Suite 2790
Miami, FL 33131
(305) 372-5200
jdickstein@phillipsandcohen.com

/s/ Amy L. Easton
AMY L. EASTON
Phillips and Cohen LLP
2000 Massachusetts Ave. N.W. 1st Floor
Washington, DC 20036
(202) 833-4567
aeaston@phillipsandcohen.com

/s/ Andrew M. Stone
ANDREW M. STONE
Stone Law Firm, LLC
437 Grant Street, Suite 1806
Pittsburgh, PA 15219
(412) 391-2005
astone@stone-law-firm.com

*Attorneys for Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I electronically filed the foregoing Memorandum with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Rohith V. Srinivas
Trial Attorney, Civil Division