IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, *ex rel.*
LOUIS LONGO,

    Plaintiff,

v.                                                                  Civil Action No. 17-1654

WHEELING HOSPITAL, INC.,
R&V ASSOCIATES, LTD., and
RONALD L. VIOLI,

    Defendants.

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE**

---

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

I.   THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER ............ 2

    A.   Plaintiffs' Forum Preference Is Entitled to No Weight and Defendants' Preference for the NDWV Favors Transfer ......................... 2

    B.   The Government's Claims Arose in the NDWV ........................................ 4

    C.   The Convenience of the Parties Favors Transfer ....................................... 6

    D.   The Convenience of the Witnesses Favors Transfer ................................. 7

    E.   The Location of Books and Records Favors Transfer .............................. 8

II.   THE PUBLIC INTEREST FACTORS STRONGLY FAVOR TRANSFER ............... 8

    A.   The Enforceability of a Judgment Is a Neutral Factor .............................. 8

    B.   Practical Considerations Favor Transfer ................................................... 8

    C.   Relative Court Congestion Does Not Disfavor Transfer .......................... 9

    D.   The Local Interest Favors Transfer .......................................................... 10

    E.   Public Policies of the Fora Favor Transfer .............................................. 10

    F.   The Familiarity of the Trial Judge with Applicable State Law ............. 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Costello v. Novartis Pharm. Corp.*,
   No. CIV. A. 05-3841, 2006 WL 1479800 (E.D. Pa. May 25, 2006) ................................. 8

*EEOC v. Univ. of Pa.*,
   850 F.2d 969 (3d Cir. 1988) ........................................................................................... 8

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) .............................................................................................. 7

*Moore Corp. v. Wallace Computer Servs., Inc.*,
   898 F. Supp. 1089 (D. Del. 1995) .................................................................................. 9

*Saint-Gobain Calmar, Inc. v. Nat'l Prod. Corp.*,
   230 F. Supp. 2d 655 (E.D. Pa. 1999) .......................................................................... 1, 7

*United States v. Gwinn*,
   C.A. No. 5:06-cv-00267, 2008 WL 867927 (S.D.W.V. Mar. 31, 2008) ....................... 3

*United States v. Klearman*,
   82 F. Supp. 2d 372 (E.D. Pa. 1999) ............................................................................... 3

*United States v. Metzinger*,
   No. CIV. A. 94-7520, 1996 WL 530002 (E.D. Pa. Sept. 17, 1996) .............................. 2

*United States ex rel. FLFMC, LLC v. Ohio Art Co.*,
   No. CIV. A. 10-230, 2010 WL 3155160 (W.D. Pa. July 30, 2010) ........................... 2, 7

*United States ex rel. FLFMC, LLC v. T.F.H. Publ'n, Inc.*,
   No. 2:10CV437, 2010 WL 4181151 (W.D. Pa. Oct. 20, 2010) ............................ 2, 6, 10

*United States ex rel. Penizotto v. Bates E. Corp.*,
   No. CIV. A. 94-3626, 1996 WL 417172 (E.D. Pa. July 18, 1996) ................................ 2

*United States ex rel. Salomon v. Wolff*,
   268 F. Supp. 3d 770 (D. Md. 2017) ............................................................................... 4

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
   771 F. Supp. 2d 42 (D.D.C. 2011) ................................................................................. 2

*United States v. Berkowitz*,
   328 F.2d 358 (3d Cir. 1964) ........................................................................................... 6

*York Group, Inc. v. Pontone,*
 C.A. No. 10-1078, 2014 WL 3735157 (W.D. Pa. July 28, 2014) ................................................... 10

## STATUTES AND RULES

28 U.S.C. § 1404(a) ............................................................................................................ 1, 2, 4, 6, 10

Fed. R. Civ. P. 45(c)(1) ............................................................................................................................ 7

## PRELIMINARY STATEMENT[1]

Defendants respectfully submit this reply brief in support of their Motion to Transfer Venue to the NDWV. Plaintiffs—the Government and Relator—do not specifically dispute that, under all of the pertinent factors the Court should consider, the NDWV is the most convenient forum. Similarly, Plaintiffs do not argue that the NDWV would be inconvenient; in fact, Plaintiffs allege *no* transfer-related hardship whatsoever that would befall them if Defendants' Motion is granted. Standing alone, these tacit concessions dictate that Defendants' Motion be granted. *See Saint-Gobain Calmar, Inc. v. Nat'l Prod. Corp.*, 230 F. Supp. 2d 655, 661 (E.D. Pa. 2002) ("When a transfer motion would aid the movant and not disadvantage the opponent, transfer is appropriate.").

Rather, Plaintiffs' brief is devoted to arguing only that Defendants have failed to show the WDPA is sufficiently inconvenient to defeat Plaintiffs' choice of forum (*e.g.*, Opp. 20)—which is not the test for transfer under 28 U.S.C. § 1404(a). But even on this point, Plaintiffs miss the mark. Plaintiffs labor in vain to manufacture or over-emphasize inconsequential ties between this lawsuit and the WDPA in the hopes of keeping this case here, and away from a Wheeling jury who should decide it. Despite Plaintiffs' obfuscation, this FCA lawsuit, at its core, is about compensation paid to West Virginia (not Pennsylvania) doctors by a West Virginia (not Pennsylvania) hospital that treats patients primarily in West Virginia (not Pennsylvania). The NDWV is the center of gravity of the Government's claims—where the operative facts allegedly occurred, where most of the witnesses and evidence are situated, and where the local interest in this case is strongest. Rather than straining to draw, at best, a hopelessly weak connection to this forum, the Court should transfer this case to the NDWV where the ties to this lawsuit are palpable and overwhelming.

---

[1] The terms defined in Defendants' opening brief ("Opening Brief" or "Open Br."), ECF #27, shall be applied herein. Plaintiffs' opposition brief, ECF #43, shall be referred to in citations as "Opp. _." The page numbers of the ECF-court filings cited herein refer to the ECF-generated page numbers that appear in the header of those documents.

## I. THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER

### A. Plaintiffs' Forum Preference Is Entitled to No Weight and Defendants' Strong Preference for the NDWV Favors Transfer

Plaintiffs err in arguing that their choice of forum is entitled to the "traditional deference" that attaches to a private plaintiff's forum selection in non-*qui tam* cases. (Opp. 9-10.) *First*, the cases cited by Plaintiffs are inapposite. In *United States ex rel. Penizotto v. Bates E. Corp.*, No. CIV. A. 94-3626, 1996 WL 417172, at *2-3 (E.D. Pa. July 18, 1996), and *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 47 (D.D.C. 2011), the courts ruled that, *as between the relator and United States*, the United States' choice of forum is accorded the "greatest weight"/"principal deference." Neither case supports the proposition that, *as between the Government and Defendants*, the Government's preference commands "traditional deference."

Contrary to Plaintiffs' misstatement at Opp. 10, *United States v. Metzinger*, No. CIV. A. 94-7520, 1996 WL 530002 (E.D. Pa. Sept. 17, 1996), was ***not*** a § 1404(a) case, but involved a *forum non conveniens* motion that sought outright *dismissal*, rather than mere transfer, of the action—a critical distinction the court itself specifically noted. *See id.* at *4 n.3. Also, in *Metzinger*, the defendant apparently did not even argue—nor did the court consider—the issue before this Court: whether the Government's forum preference in *qui tam* suits receives little or no deference. This Court rightly has refused to follow similar inapt authorities on the same ground. *See United States ex rel. FLFMC, LLC v. T.F.H. Publ'n, Inc.*, No. 2:10cv437, 2010 WL 4181151, at *3 n.2 (W.D. Pa. Oct. 20, 2010) (distinguishing a case, like *Metzinger*, where the defendant "neglected to raise a legally supported contention that Plaintiff's choice of forum should be given no or lesser deference in a *qui tam* case"); *United States ex rel. FLFMC, LLC v. Ohio Art Co.*, C.A. No. 10-230, 2010 WL 3155160, at *1 n.3 (W.D. Pa. July 30, 2010) (same).

2

Likewise, in *United States v. Gwinn*, C.A. No. 5:06-cv-00267, 2008 WL 867927, at *18 (S.D.W.V. Mar. 31, 2008), the court did not consider whether the Government's forum choice was entitled to little or no deference. The court's analysis was driven by the fact that, unlike in this case (i) the Government sued in the district where the main defendant "operated, submitted claims, received payments from Medicare, and pled guilty to criminal charges;" and (ii) only *two defendants* in the multi-defendant case moved to transfer venue which, if granted, would have forced the Government to conduct multiple trials in different districts based on the same facts and legal issues. *Id.* Of course, that is not the situation here, in which *all* Defendants seek transfer to the NDWV where the operative facts allegedly occurred, where the Government's claims arose, and where most of the witnesses and documents are located.

Lastly, Plaintiffs cherry-pick language out-of-context from *United States v. Klearman*, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1990), arguing that although the Government's choice of forum is accorded less deference, it still has "significant weight." (Opp. 10.) Plaintiffs neglect to mention, however, that the *Klearman* court **granted** a motion to transfer venue based on its determination that: "[I]n light of the significant benefits to the convenience of the expected witnesses and other parties to be realized by transferring venue, the government's choice of forum is properly *set aside* in the present case." *Id.* (emphasis added). *Klearman*'s sound reasoning dictates that the Government's forum choice in this case should be "set aside" for the same reasons.

*Second*, lacking any legal authority to support its position, the Government nonetheless persists in arguing that its choice of forum garners "traditional deference" because (i) the WDPA is home to the Relator and Defendants R&V and Violi; (ii) the Government prefers the WDPA; and (iii) the proposed transferee forum, the NDWV, is only a one-hour drive away. (Opp. 10.)

3

However, the Relator's forum preference is all but irrelevant now that the Government has intervened (Open Br. 9), a fact the Government concedes. (Opp. 10-11.) Although Defendants R&V and Violi have residences here, the Government *strains* to imbue "significance" to the WDPA by relying on the Relator's hopelessly vague averments in his Declaration, including that he had only *three* meetings with Mr. Violi in Pittsburgh. (Opp. 11.) According to the Relator, at the first meeting, Mr. Violi extended him an offer of employment at Wheeling Hospital (ECF #43-1 ¶ 5), which is irrelevant to the Government's claims that Wheeling Hospital improperly compensated physicians. As for the other two meetings, the Relator is silent as to their purpose or whether they were related *in any way* to the Government's allegations. (*See id.* ¶ 8.) In any event, R&V and Mr. Violi have indicated that the NDWV is more convenient for them by requesting transfer.[2] *See United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 776 (D. Md. 2017).

Finally, Plaintiffs' point that Wheeling is only an hour drive from Pittsburgh recklessly disregards the demonstrated hardships and dangers of litigating in this forum to Wheeling Hospital's *patients* and other interested parties versus at the federal courthouse in Wheeling, which is only ***3.3 miles and a 7 minute drive*** from Wheeling Hospital. (ECF #27-1 ¶ 4, Ex. C.) This is a critically compelling fact to the § 1404(a) analysis, and one that weighs in favor of transfer.

### B. The Government's Claims Arose in the NDWV

Plaintiffs proffer only vague and conclusory allegations in a failed attempt to show that Defendants engaged in conduct in this district that gives rise to the Government's claims. (Opp.

---

[2] The Pittsburgh residences of R&V's Violi and Vince Deluzio do not merit keeping this case in the WDPA for additional reasons. Mr. Deluzio served as an outside lawyer and, as such, his testimony likely is protected by the attorney-client privilege. Likewise, the Government's emphasis on Mr. Violi in opposing transfer is misplaced. Due to his health issues, the Government already has moved to preserve Mr. Violi's testimony via an early deposition for later use at trial. (ECF #37.) Before the Government filed its motion, Defendants' counsel agreed to confirm with Mr. Violi, and Mr. Violi has confirmed, that he would not oppose an early deposition at such time when he is medically-able to be deposed. Thus, Mr. Violi's residence or convenience is irrelevant to the § 1404(a) analysis.

11-12.) *First*, Plaintiffs assert that Mr. Violi usually worked *only one day per week* (on Fridays) from R&V's Pittsburgh office. Unless Plaintiffs are suggesting Mr. Violi was moonlighting as CEO at another hospital Monday thru Thursday, they presumably concede Mr. Violi spent the majority of every work week at Wheeling Hospital in Wheeling, West Virginia, where he had an apartment.[3] (ECF #27-2 ¶ 4.) More importantly, Plaintiffs make no effort to identify the work Mr. Violi performed in Pittsburgh or show that it was related to the Government's FCA claims.

*Second*, the Relator cites *only three instances during the four years* he was employed by Wheeling Hospital that he met with Mr. Violi in Pittsburgh on "hospital-related business." (Opp. 11.) As noted above, at the first meeting, the Relator claims Mr. Violi offered him a job at Wheeling Hospital, which has nothing to do with the Government's claims that Wheeling Hospital entered into unlawful compensation arrangements with physicians. With respect to the other two meetings, the Relator does not reveal the purpose of these rare and infrequent Pittsburgh rendezvous (information the Relator must know because he claims to have attended the meetings himself), much less show that these meetings have any nexus to the Government's FCA claims.

*Third*, the Relator vaguely avers he "made phone calls, or participated in phone calls that were made to Mr. Violi at R&V's Pittsburgh office." (ECF #43-1 ¶ 9.) Once again, the Relator proffers no details regarding those calls or whether they had anything to do with this case. The same is true of the Relator's non-specific assertion that "Wheeling Hospital staff often faxed documents to R&V's Pittsburgh office for Mr. Violi's review." (ECF #43-1 ¶ 11.)

*Fourth*, Plaintiffs allege Wheeling Hospital "frequently recruited physicians from this District" (Opp. 12), but the Hospital's recruitment initiatives are irrelevant to how the Hospital compensated physicians. In any event, Plaintiffs cite only *two physicians*—Drs. Adam Tune and

---

[3] Plaintiffs' criticism of Mr. Violi for not submitting his own declaration in support of Defendants' Motion (Opp. 11) is inappropriate and mean spirited given Mr. Violi's ongoing health struggles, as explained at *supra* n.2.

5

Lowell Shinn—out of the many doctors identified in the Complaint whom Wheeling Hospital recruited from this district. (Opp. 12.) Here again, Plaintiffs do not claim these physicians' allegedly unlawful compensation arrangements were discussed or negotiated in Pennsylvania. Quite to the contrary, Dr. Shinn confirms in his Declaration *in support* of Defendants' Motion that his employment contract was negotiated in *Wheeling, West Virginia*. (ECF #27-5 ¶ 5.)

*Finally,* the extent to which the Government veers off course is highlighted by its assertion that "Defendants repeatedly *availed* themselves of this District in matters relevant to this case." (Opp. 12 (emphasis added).) "Purposeful availment" is a component of the "minimum contacts" test for *personal jurisdiction* in civil suits generally, which the Government improperly conflates with the broader convenience and interests-of-justice analysis that governs this Motion. Whether Defendants are subject to personal jurisdiction in this Court is irrelevant under § 1404(a). *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964). Under this private interest factor, the question before the Court is whether the Government's claims arose from Defendants' alleged conduct in this forum or the NDWV. As noted above, Plaintiffs offer no evidence that Defendants did anything in this district that gives rise to the Government's claims.[4] Instead, the Government's claims arose, if at all, in the NDWV. (Open Br. 11.) This factor thus favors transfer.

### C. The Convenience of the Parties Favors Transfer

Plaintiffs' argument on this factor boils down to the rank assertion that the WDPA is not inconvenient to the parties because the courthouses in Wheeling and Pittsburgh "are separated by a mere 59 miles." (Opp. 13.) Of course, this misses the point—the proper comparison for purposes of evaluating convenience of the parties is the respective distances between Wheeling Hospital,

---

[4] Assuming *arguendo* R&V and Violi engaged in the *de minimis* forum conduct alleged in Plaintiffs' brief, that does not alter the reality that "few of the operative facts occurred in the chosen forum, and that defendant[s have] indicated a strong preference for another district," which favor transfer. *T.F.H. Publ'n, Inc.*, 2010 WL 4181151, at *2.

6

which is the epicenter of the Government's case, and the federal courthouses in Wheeling (3.3 miles and a 7 minute drive) and Pittsburgh (57.3 miles and a one hour and 8 minute drive without traffic). (ECF #27-1 ¶¶ 4-5, Exs. C & D.) Although Plaintiffs ignore it, the data speaks for itself.

In the same vein, Plaintiffs' assertion that the convenience of Wheeling Hospital, as the sole Wheeling-based party, is entitled to the least weight is absurd.[5] (Opp. 14.) If anything, Wheeling Hospital's convenience should predominate because Wheeling Hospital's physicians, employees and—most importantly—its *patients* will bear the brunt of the burden if this case proceeds in this forum, a burden that easily can be eliminated by transferring venue to the NDWV.

Finally, Plaintiffs affirmatively concede the NDWV is not inconvenient (Opp. 13) and (contrary to Plaintiffs' false assertion) Defendants' Opening Brief at 11-12, 16 amply shows why the NDWV is more convenient for Defendants. This factor thus favors transfer.

### D. The Convenience of the Witnesses Favors Transfer

Plaintiffs argue that witness convenience "is relevant only to the extent that the witnesses may actually be unavailable for trial in one of the fora" (Opp. 15 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995))), noting that Defendants have identified no witness who is beyond the 100-mile reach of the Court's compulsory process under Fed. R. Civ. P. 45(c)(1). Even if there were a strict rule that convenience of witnesses who are within this Court's subpoena power is not relevant to this private interest factor (and cases suggest otherwise), *see Ohio Art Co.*, 2010 WL 3155160, at *3 (assessing this factor in terms of "business disruption" of witnesses without specifically mentioning their unavailability for trial); *Saint-Gobain Calmar, Inc.*, 230 F. Supp. 2d at 658-59 ("The analysis for transfer [of venue] is flexible and depends on the unique

---

[5] Plaintiffs argue, without a hint of embarrassment, that the WDPA is not inconvenient to Wheeling Hospital because, "[a]s a large corporate entity with greater resources, it would be less inconvenienced by litigating this case outside of its hometown" (Opp. 14)—as if Wheeling Hospital, a non-profit/charitable organization, could compete with the boundless resources of the Federal Government!

7

facts of each case."), those considerations are highly relevant to the second public interest factor regarding practical considerations of expediting trial and reducing costs. *See Costello v. Novartis Pharm. Corp.*, No. Civ. A. 05-3841, 2006 WL 1479800, at *2-3 (E.D. Pa. May 25, 2006). Either way, Plaintiffs effectively concede the NDWV is more convenient for most of the witnesses[6] (Opp. 15-16), which thus favors transfer.

### E. The Location of Books and Records Favors Transfer

Plaintiffs do not identify any specific documents relevant to this case that are in Pennsylvania. (Opp. 16-17.) This factor favors transfer.

## II. THE PUBLIC INTEREST FACTORS STRONGLY FAVOR TRANSFER

### A. The Enforceability of a Judgment Is a Neutral Factor

The parties agree this factor neither favors nor disfavors transfer. (Opp. 17.)

### B. Practical Considerations Favor Transfer

On this factor, Plaintiffs' only argument is that under the "first-filed rule," the Court should disregard Wheeling Hospital's pending suit against the Relator in the NDWV ("Wheeling Case") as favoring transfer because, according to Plaintiffs, "Wheeling Hospital filed [the Wheeling Case] precisely to justify seeking transfer of this case from this District to one that the hospital evidently views as more favorable." (Opp. 17.) Plaintiffs' invocation of the first-filed rule is misplaced.

*First*, the first-filed rule obviously is inapplicable because the Wheeling Case was *not* filed in *this* Court, and this action and the Wheeling Case involve different parties and different issues. *See EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (under the first-filed rule, a court may

---

[6] Plaintiffs identify only *four* witnesses at Opp. 15 but fail to demonstrate the WDPA is their preferred forum. In fact, two of the witnesses—R&V's Violi and Deluzio—already have indicated their preference for the NDWV in light of R&V's request for transfer. *See also supra* n.2. Plaintiffs name Dr. Tune as a third potential witness but do not allege or show that he has expressed a preference for the WPDA. This is not surprising because Dr. Tune spends his work week at Wheeling Hospital in Wheeling, West Virginia. (ECF #27-8, ¶ 5.) The forum preference of the fourth witness cited by Plaintiffs, the Relator, is entitled to no deference, as explained in the Opening Brief at 9 (collecting cases).

dismiss or enjoin a subsequent action filed in *that* court "involving the same parties and the same issues already before *another* district court" (emphasis added)).

*Second,* Plaintiffs' suggestion that Wheeling Hospital played fast-and-loose by filing the Wheeling Case in the NDWV to forum shop the transfer of this case to that venue is unfounded.[7] From the very beginning, Wheeling Hospital has made no secret of its strong view that, as a matter of common sense, any proceedings related to the Government's allegations should be conducted in Wheeling. For example, during the Government's investigation when it requested CID testimony of Wheeling Hospital employees in Pittsburgh, Wheeling Hospital's counsel insisted—and the Government acquiesced—that the witnesses testify *at the U.S. Attorney's Office in Wheeling, which they did.* (Declaration of Meena Sinfelt ("Decl.") ¶¶ 2-5, Exhibits A-C.) In fact, the *Government* even suggested taking Mr. Murdy's CID testimony "at the *Wheeling U.S. Attorney's Office*." (Decl. ¶ 5, Ex. C at 1 (emphasis added).) Thus, it should come as no surprise to anyone that Wheeling Hospital sued the Relator in the NDWV and now seeks to transfer this action to that very same forum—where both cases belong. The Government's misguided reliance on the first-filed rule does not—and cannot—override the obvious and inescapable conclusion that the NDWV is the logical and preferable forum for both lawsuits. This factor thus favors transfer.

### C.   Relative Court Congestion Does Not Disfavor Transfer

Plaintiffs do not address, let alone dispute, Defendants' points that this factor does not disfavor transfer to the NDWV. (Opp. 18.) The Court should treat this factor as neutral.

---

[7] Forum-shopping triggers application of the first-filed rule only when it "is the *sole* motivating factor for plaintiff's choice of forum." *Moore Corp. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089, 1099-1100 (D. Del. 1995) (emphasis in original). Plaintiffs make no such allegation here, nor could they do so. Wheeling Hospital properly sued the Relator in the NDWV for legitimate reasons. In any event, Plaintiffs' chutzpah in accusing Wheeling Hospital of forum shopping is ironic given that the Government's decision to sue in the WDPA is a classic example of blatant forum shopping to avoid submitting its claims to a Wheeling jury—a point highlighted in Defendants' Opening Brief at 7, 17-18 which the Government notably does not deny. In sum, the Government is in no position to accuse anyone—least of all, Wheeling Hospital—of forum shopping.

9

### D. The Local Interest Favors Transfer

Plaintiffs concede the NDWV has the greatest interest in this case but argue that the WDPA shares a "substantial" interest because a "significant amount of the relevant conduct took place in this District." (Opp. 18.) As explained above, however, Plaintiffs do not identify *any* FCA conduct that Defendants allegedly committed in, or directed to, this district. This factor favors transfer.[8]

### E. Public Policies of the Fora Favor Transfer

Plaintiffs do not identify *any* Pennsylvania public policy implicated by this case and merely dismiss out-of-hand Defendants' well-founded points that West Virginia policy concerns support resolving this suit in the NDWV. (Opp. 20.) Accordingly, this factor favors transfer.

### F. The Familiarity of the Trial Judge with Applicable State Law

To the extent state-law governs the Government's two common-law claims, this factor favors transfer. If federal law controls the common-law claims, this factor is neutral.

## CONCLUSION

Defendants have more than met their preponderance burden to transfer venue under 28 U.S.C. § 1404(a). Analysis of the relevant factors, discussed above, as well as sheer common sense overwhelmingly point to the NDWV as the forum that would best promote convenience of the parties and witnesses, and the interests of justice in this case. Accordingly, Defendants' Motion to Transfer Venue of this action to the NDWV should be granted.

---

[8] Plaintiffs argue that because Defendants R&V and Violi reside here, the WDPA has a "strong interest in ensuring that their residents are complying with federal laws." (Opp. 19.) But Plaintiffs' cases are distinguishable. In *T.F.H. Publ'n, Inc.*, this Court noted that New Jersey had an "interest in ensuring that companies within its jurisdiction are complying with federal law," but the Court did so in *ordering transfer* because "[a]ll of [the New Jersey defendant's] manufacturing, including the marking and production of [its falsely patented products], takes place in New Jersey," 2010 WL 4181151, at *1, and "the documents and witnesses related to the subject matter of this action are located in New Jersey," *id.* at *2. In *York Group, Inc. v. Pontone*, C.A. No. 10-1078, 2014 WL 3735157, at *15 (W.D. Pa. July 28, 2014), a non-*qui tam* case, the local interest factor was neutral because the WDPA had an interest in the suit even though much of the conduct occurred in New York insofar as "(1) *plaintiffs'* businesses were managed out of Pittsburgh;" [and] (2) *plaintiffs* suffered damages in Pittsburgh." (Emphasis added.) These considerations are inapplicable here.

Date: May 24, 2019

Respectfully submitted,

/s/ George E. Horn, Jr.
George E. Horn, Jr. (MI Bar No. P40495)
Barnes & Thornburg LLP
700 1st Source Bank Center
100 North Michigan
South Bend, IN 46601-1632
Telephone: 574.237.1189
Facsimile: 574.237.1125
George.Horn@btlaw.com

/s/ Roscoe C. Howard, Jr.
Roscoe C. Howard, Jr.
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, NW, Suite 500
Washington, D.C. 20006-4623
Telephone: 202.371.6378
Roscoe.Howard@btlaw.com
*Pro hac vice motion forthcoming*

/s/ Meena T. Sinfelt
Meena T. Sinfelt
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, NW, Suite 500
Washington, D.C. 20006-4623
Telephone: 202.371.6368
Meena.Sinfelt@btlaw.com
*Admitted pro hac vice*

***Attorneys for Defendant***
***Wheeling Hospital, Inc.***

/s/ Stephen S. Stallings
Stephen S. Stallings, Esq.
PA ID No. 205131
The Law Offices of Stephen S. Stallings, Esq.
310 Grant Street, Suite 3600
Pittsburgh, PA 15219
Telephone: 412.322.7777
Facsimile: 412.322.7773
attorney@stevestallingslaw.com

*/s/ Kerry Brainard Verdi*
Kerry Brainard Verdi (*Admitted pro hac vice*)
Benjamin R. Ogletree (*pro hac forthcoming*)
Verdi & Ogletree PLLC
1325 G Street, NW, Suite 500
Washington, D.C. 20005
Telephone: 202.449.7703
Facsimile: 202.449.7701
kverdi@verdiogletree.com
bogletree@verdiogletree.com

***Attorneys for Defendants***
***R&V Associates, Ltd. and Ronald L. Violi***

## CERTIFICATE OF SERVICE

I, Meena Sinfelt, certify under penalty of perjury that on May 24, 2019, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record in this action registered to receive CM/ECF notification.

By: */s/ Meena T. Sinfelt*
Meena Sinfelt
*Admitted Pro Hac Vice*
